UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

THOMAS FARROW,

                    Plaintiff,

   -against-                                        5:12-cv-1401 (LEK/ATB)

CITY OF SYRACUSE; *et al.*,

                    Defendants.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

Before the Court are Defendants City of Syracuse ("City"), Andrew Wigton ("Wigton"), and Gordon Quonce's ("Quonce") Motion for summary judgment and Plaintiff Thomas Farrow's ("Plaintiff") Cross-Motion for summary judgment. Dkt. Nos. 30 ("Motion"); 30-18 ("Memorandum"); 40-1 ("Response"). For the following reasons, the Court grants Defendants' Motion in part and denies Plaintiff's Cross-Motion.

**II.    BACKGROUND**

In the early morning of December 8, 2010, Plaintiff broke into and entered Brett's Variety and Smoke Shop in Syracuse, New York. Dkt. No. 30-1 ("Defendants' SMF") ¶ 3-4. Wigton, a City policeman patrolling the area, heard glass shattering and observed an individual moving around in the store. Id. Wigton called for backup, saw Plaintiff exit the store, and drew his gun and demanded that Plaintiff surrender. Id. ¶¶ 5-7. Plaintiff fled. Id. ¶ 7.

Fellow officer Quonce responded to Wigton's call. Id. ¶ 11. Wigton and Quonce state that Plaintiff fell over an approximately four-foot tall retaining wall and, that while Plaintiff attempted to get up and continue to flee, both ran toward Plaintiff and "began their attempts to take him into

custody." Id. ¶¶ 14-15. Plaintiff states that he did not fall over the wall; rather, he tripped in the parking lot. Resp. at 1. Plaintiff also asserts that he usually used a cane to walk, had limited mobility, and could not get up off of the ground. Id. The parties dispute whether Plaintiff struggled with the officers; Defendants state that Plaintiff "flailed" on the ground to actively resist being handcuffed, while Plaintiff asserts that any movement during handcuffing was to shield the officers' blows. Defs.' SMF ¶ 16; Resp. at 1. Wigton struck Plaintiff's upper body several times with his knee, and Quonce struck Plaintiff's face multiple times with his closed fist. Defs.' SMF ¶ 17. Wigton kneed the back of Plaintiff's head and then made the arrest. Id. ¶ 20. Police recovered three packs of factory-wrapped Newport cigarettes on the ground near where Plaintiff had been arrested, and another near the broken window on the floor of the store. Id. ¶¶ 26-27. Quonce and Wigton observed a laceration on Plaintiff's face and called an ambulance. Id. ¶ 22. Plaintiff sustained several injuries, including lacerations and fractures to Plaintiff's patella, nose, orbital bone, wrist, and a vertebrae in the thoracic spine. Resp. at 1. Plaintiff was convicted of burglary. Id. He required the use of a wheelchair for the entirety of the resulting 30 month prison sentence, during which his condition continued to deteriorate. Id.

Plaintiff has limited memory of the night, particularly the period between being taken down by Wigton and Quonce and his transportation to the hospital in the ambulance. Id. Plaintiff had previously been diagnosed with bipolar disorder, manic depression, and schizophrenia, and claims that he had been unmedicated for some time at the time of his arrest. Defs.' SMF ¶¶ 26-27; Dkt. No. 30-14 at 9.

On February 28, 2011, Plaintiff filed a complaint with the Syracuse Police Department ("Department"). Dkt. No. 30-16. Plaintiff explained his injuries and stated that he had limited

2

recollection of his arrest, which he attributed to his lack of medication. Id. The Department issued a response that Plaintiff sustained the injury while he walked through a broken window. Id. Plaintiff, however, claimed that he had no shards of glass on his body or clothing and, even though he did not have full recollection of the events, disputed the Department's explanation for his injuries. Id.

Plaintiff then filed the Complaint, which asserted constitutional claims pursuant to 42 U.S.C. § 1983 including excessive force, failure to train, denial of right to counsel in a criminal proceeding, and coercion of a guilty plea. See generally Compl. The Honorable Andrew T. Baxter, United States Magistrate Judge, reviewed the Complaint pursuant to 28 U.S.C. § 1915(e) and recommended dismissal of the claims for denial of right to counsel and coercion of guilty plea. Dkt. No. 5 ("Report-Recommendation"). The Court adopted the Report-Recommendation. Dkt. No. 11. Defendants filed an Answer. Dkt. No. 14 ("Answer"). After the close of discovery, Defendants filed their Motion. Mot. Plaintiff filed a Response, in which he cross-moved for summary judgment, and Defendant replied. See Response; Dkt. No. 44-4 ("Reply").

## III. LEGAL STANDARD

Summary judgment is proper where "there is no genuine issue as to any material fact," and thus "the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 94 (2d Cir. 2012). If the moving party will not bear the burden at trial, it may, in order to meet its summary-judgment burden of production, either: (1) "submit affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2)

3

"demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." Celotex, 477 U.S. at 330-32 (Brennan, J., dissenting). If the moving party carries its burden of production, the nonmoving party must raise some genuine issue of material fact; "metaphysical doubt as to material facts" is not enough. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). However, the burden of persuasion remains at all times with the moving party, who must affirmatively demonstrate entitlement to judgment as a matter of law. Celotex, 477 U.S. at 332.

## IV. DISCUSSION

### A. Defendants' Motion

Defendant seeks summary judgment on the following grounds: (1) that Plaintiff's lack of memory leaves his claims unsupported by evidence and thus not appropriate for trial; (2) Wigton and Quonce's use of force was objectively reasonable; (3) Wigton and Quonce are entitled to qualified immunity; and (4) no evidence substantiates that the City failed to train its police officers to use appropriate force in making an arrest. Defs.' Mem. at 14-25. Defendants further assert that the Response should be struck and their Motion should be considered unopposed. See generally Reply.

*1. Motion to Strike Plaintiff's Response*

Defendants state that their statement of facts should be deemed admitted and their Motion unopposed because Plaintiff (1) failed to comply with the Local Rules by filing his Memorandum late and not responding to Defendants' SMF; and (2) contradicted prior sworn testimony as to the

4

extent of his memory.[1]  Id.

### a. Failure to Comply with Local Rules

Courts have broad discretion in determining whether to overlook a party's failure to comply with local court rules. Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (citing Wright v. BankAmerica Corp., 219 F.3d 79, 85 (2d Cir. 2000)). On one hand, "courts have authority to enact Local Rules governing the conduct of the business before them, and such Local Rules have the force of law." Whitfield v. Scully, 241 F.3d 364 (2d Cir. 2001). But, when a party fails to respond to the opposing party's statement of material facts or file its own, a court may nevertheless "conduct an assiduous review of the record" where justice so requires. Monahan v. N.Y. City Dep't of Corr., 214 F.3d 275, 292 (2d Cir. 2000).

The facts of this case warrant leniency toward the Plaintiff's failure to comply with the Local Rules. Plaintiff is currently homeless. Dkt. No. 40. He has diagnosed mental health conditions, as well as issues with mobility that—at least putatively—arose in part due to his arrest. Dkt. No. 30-14 at 9; Resp. Although the Court has, on occasion, held *pro se* litigants accountable for failing to comply with the Local Rules, see Sheils v. Brannen, No. 05-CV-0135, 2008 WL 4371776, at *2-3 (N.D.N.Y. Sep. 18, 2008) (Kahn, J.) (granting defendants' summary judgment motion and denying plaintiff's on the basis of failure to comply with local rules where plaintiff was an "extraordinarily experienced *pro se* litigant" who had "filed at least *seventeen* federal or state court actions or appeals" (emphasis in original)), the Court finds Plaintiff's multiple limitations to be good cause to

---

[1] Defendants also argue that Plaintiff's cross-motion should be struck for substantially the same reasons. Reply at 16-18. However, as explained *infra*, there are issues of fact as to each of Plaintiff's claims and therefore summary judgment is inappropriate regardless.

"conduct an assiduous review of the record."[2]

### b. Inconsistencies with prior proceedings and sworn statements

Defendants allege that Plaintiff's Response, in which Plaintiff asserted enough knowledge to state that he did not fall over the retaining wall or resist arrest, are inconsistent with his Complaint and statements he made during a plea hearing, which Defendants claim establish that Plaintiff had no knowledge of the night. Reply at 13-16. Defendant argues that because a plaintiff cannot set forth testimony in opposition to summary judgment that contradicts previous *deposition* testimony by omission or addition, see Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001); Raskin v. Wyatt Co., 125 F.3d 55, 63 (2d Cir. 1997); Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996); Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987), the same applies to statements in the Complaint. Reply at 13-14. However, the allegations in the Complaint are consistent with the facts advanced in the Response. The Complaint states that Plaintiff "do[es] not *fully* know or understand the circumstances [of the incident], because [he] blacked out." Compl. ¶ 15 (emphasis added and emphasis in original omitted). Plaintiff never claimed to lack *any* recollection of what happened on that night, and therefore he is not precluded from asserting some knowledge of those events now. That Plaintiff says that he blacked out from the time of his arrest until waking up in the ambulance is also consistent with the Complaint.

Regarding Plaintiff's colloquy at his plea hearing, Plaintiff's positive responses to the state-court judge's questions are not inconsistent with his position in his Response. Defendants cite to two portions of the plea hearing transcript:

---

[2] For the same reasons, the Court denies Defendants' separate Letter Motion to consider their Motion unopposed. Dkt. No. 38.

> THE COURT: All right. So Mr. Farrow I understand that you wish to plead guilty, but because you have no recollection you are not in a position to admit factually as to why you are guilty, but that you have intelligently concluded that it's in your best interest to take advantage of the plea bargain, is that true?
> THE DEFENDANT: Yes, sir, it is.
>
> . . . .
>
> THE COURT: The Court is satisfied upon the statements of counsel and Mr. Farrow that there is strong evidence of actual guilt that the defendant has intentionally and intelligently concluded that his best interests will be served by pleading guilty. He is unable to admit the offense because he does not remember it. Nevertheless, he is still willing to plead guilty. But he also believes that there is sufficient evidence to convict him. He does not wish to risk the potential penalties that might come after a conviction at trial.
> So Mr. Farrow do you wish then, based upon those factors, to enter a plea of guilty to burglary in the third degree and resisting arrest?
> THE DEFENDANT: Yes sir.

Dkt. No. 30-14 at 3:17-3:23; 5:25-6:13. Defendants assert that, because Plaintiff did not object to the particular portion of the colloquy in which the judge stated that Plaintiff had "no recollection," Plaintiff should now be barred from asserting knowledge of the events leading to his arrest. Reply at 15. When a criminal defendant responds "terse[ly]" to a judge's compound question, courts have not assigned preclusive effect to a Defendant's response beyond the direct question asked. See Blystone v. Horn, 664 F.3d 397, 425-26 (3d Cir. 2011) (declining, in the context of a habeas petition, to infer from a criminal defendant's waiver of presentation of certain mitigating evidence in response to a judge's compound question that the defendant intended to waive presentation of all mitigating evidence). The Court finds it unreasonable to interpret Plaintiff's answers—which confirmed that Plaintiff wished to avail himself of the plea agreement despite not admitting guilt—as signaling that he had no knowledge rather than limited knowledge of the relevant events.

Even if Defendants are also arguing that the plea itself prevents Plaintiff from asserting that

7

he did not resist arrest, no preclusive effect attaches because Plaintiff did not admit to the underlying facts. U.S. v. Savage, 542 F.3d 959, 962 (2d Cir. 2008) (citing North Carolina v. Alford, 400 U.S. 25, 37-38 (1970)); Thomas v. Roach, 165 F.3d 137, 144 (2d Cir. 1999) (holding that a plaintiff's *nolo contendere* plea to a charge for assaulting a peace officer did not bar him from arguing that he did not resist arrest on an excessive force claim). Id. at 144. That Plaintiff's admission was termed a guilty plea rather than a *nolo* plea "is of no constitutional significance . . . , for the Constitution is concerned with the practical consequences, not the formal categorizations, of state law." Alford, 400 U.S. at 37. Plaintiff's plea is identical, in substance and consequence, to the plea in Thomas. 165 F.3d at 144 ("[Plaintiff] did not admit that he [resisted arrest]; rather, he only admitted his recognition that he probably would lose if he went to trial.").

    2. *Excessive Force*

"Claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' . . . are analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989). There is no excessive force where, "accepting all of the allegations as true, it is clear that the force used by the officers was objectively reasonable under the circumstances." Messina v. Mazzeo, 854 F. Supp. 116, 128-29 (E.D.N.Y. 1994). The objective reasonableness inquiry weighs the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396. Courts must consider the totality of the circumstances, "including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." Sullivan v. Gagnier, 225 F.3d 161, 165 (2d Cir. 2000).

8

a. Objective Reasonableness

Defendants argue that the force they used was objectively reasonable as a matter of law. Mem. at 14-20. The parties dispute neither the force used nor the injuries sustained: Wigton admitted delivering several knee strikes to Plaintiff's back, and one to Plaintiff's head, and Quonce struck Plaintiff once in the side of the head, and several times in the face, with a closed fist. Dkt. Nos. 30-3 ("Wigton Affidavit") ¶¶ 11-12; 30-4 ("Quonce Affidavit") ¶¶ 6-7. And Plaintiff sustained injuries—including fractures to the patella, thoracic spine, and orbital bone, as well as cuts, scrapes, and bruises—in the course of the arrest. See generally Mem.; Reply.

Wigton and Quonce's assertions that Plaintiff resisted arrest are insufficient to establish the reasonableness of the force used in the arrest. Disputes regarding the degree to which Plaintiff resisted arrest are sufficient to withstand summary judgment as long as a "reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." Burke v. Cicero Police Dep't, No. 07-CV-624, 2010 WL 1235411, at *9-10 (N.D.N.Y. Mar. 31, 2010) (denying summary judgment where plaintiff disputed resisting arrest and defendants admitted use of force) (citing O'Bert v. Vargo, 331 F.3d 29, 37 (2d Cir. 2003)); see also Jeffreys v. Rossi, 275 F. Supp. 2d 463, 476 (S.D.N.Y. 2003) (citing Hayes, 84 F.3d at 619) ("It is axiomatic that courts should not assess credibility on summary judgment."); Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 470 (S.D.N.Y. 1998) (stating that courts should only dispose of factual allegations when they are "so contradictory that doubt is cast upon their plausibility"). Where a plaintiff alleges that he was largely defenseless during the arrest, courts have found such allegations to be "plainly sufficient to withstand a motion for summary judgment" where they do not clearly contradict other record evidence. See, e.g., Ryan v. Moss, No. 11-CV-6015P, 2013 WL 956722, at *10 (W.D.N.Y. Mar. 12, 2013) (denying summary

9

judgment where plaintiff suffered broken clavicle during arrest and alleged that "he was not combative during the interaction") (citing Breen v. Garrison, 169 F.3d 152, 153 (2d Cir. 1999)); Ostroski v. Town of Southold, 443 F. Supp. 2d 325, 342-43 (E.D.N.Y. 2006) (denying summary judgment where plaintiff disputed resisting arrest and officers allegedly used force after plaintiff had been subdued). Here, Plaintiff makes such an allegation, and record evidence does not clearly contradict it.[3]

Even assuming *arguendo* that Plaintiff "flailed" on the ground at some point during the arrest, whether such flailing occurred before or after Wigton and Quonce began their use of force is a genuine issue of material fact. If Plaintiff flailed only after Wigton and Quonce began the use of force, it is less likely that such force was "necessary and reasonable" under the circumstances. McLaurin v. Falcone, No. 04-4849-CV, 2007 WL 247728, at *1 (2d Cir. Jan. 25, 2007); see also Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987) (reversing grant of summary judgment due to "conflicting accounts as to [which party] initiated the use of force and how much force was used by each").[4] Although Plaintiff had previously been in flight, it is undisputed that, when Wigton and Quonce reached him, Plaintiff had fallen and been on the ground—unable to get back up—while Wigton and Quonce approached him. See Resp.; Wigton Aff. ¶ 11. Wigton states that Plaintiff "resisted [Defendants'] efforts to place him under arrest" "[o]nce Officer Quonce and I were upon

---

[3] Even if Plaintiff had no memory of the arrest, serious injury coupled with a lack of recollection would likely preclude summary judgment. See Santos v. Gates, 287 F.3d 846, 851-52 (9th Cir. 2002) (citing Ting v. United States, 927 F.2d 1504, 1508 (9th Cir. 1991)). The facts before the Court also support an inference that Plaintiff's lack of recollection was caused not by his lack of medication, but by the several blows to the head that Plaintiff sustained during the arrest. Santos, 287 F.3d at 851-52; Ting, 927 F.2d at 1508.

[4] Although McLaurin dealt with qualified immunity, rather than the actual legality of the force used, 2007 WL 247728, at *1, for the reasons explained *infra* the analyses here are the same.

him." Wigton Aff. ¶ 11. It is unclear whether Wigton used "upon" to mean "physically on top of" or "at the same location." The latter suggests that Plaintiff intiated the use of force, while the former could suggest that Defendants did.

Neither does Wigton and Quonce's circumstantially supported belief that Plaintiff may have possessed a weapon authorize force as a matter of law. Whether a police officer was reasonable in her belief that a criminal suspect possessed a weapon is a genuine issue of material fact, rendering summary judgment inappropriate. See Curry v. City of Syracuse, 316 F.3d 324, 333-34 (2d Cir. 2003) (reversing grant of summary judgment where reasonable jury could have credited plaintiff's assertion that he did not reach for his sock during the arrest). Indeed, a principal consideration in the reasonableness of that belief is whether a plaintiff was actually armed; here, Plaintiff was not armed. See id. at 333 n.7. Furthermore, Wigton and Quonce point to no objective conduct that would suggest Plaintiff had a weapon. See generally Wigton Aff.; Quonce Aff.

For these reasons, there are disputed facts as to the reasonableness of Defendants' use of force, and therefore summary judgment is not appropriate.[5]

### b. Qualified Immunity

Defendants also assert that they are entitled to summary judgment on qualified immunity grounds. Qualified immunity is an affirmative defense. Lee v. Sandberg, 136 F.3d 94, 101 (2d Cir. 1997). "The doctrine of qualified immunity entitles public officials to freedom from suit for acts undertaken in their official capacity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe that their acts did not

---

[5] Because the Court has found genuine issues of material fact as to Plaintiff's excessive force claim, Plaintiff's Cross-Motion for summary judgment is also denied.

violate those rights." Martinez v. Simonetti, 202 F.3d 625, 633-34 (2d Cir. 2000). Significant emphasis should be placed on whether or not the legality of the act is governed by controlling precedent, see Richardson v. Selsky, 5 F.3d 616, 623 (2d Cir. 1993), and in the Second Circuit "[i]t is beyond dispute that the right to be free from excessive force has long been clearly established," Green v. Montgomery, 219 F.3d 52, 59 (2d Cir. 2000).

A defendant's belief is objectively reasonable if "officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context." Zalaski v. City of Hartford, 723 F.3d 382, 389 (2d Cir. 2013). Qualified immunity and Fourth Amendment excessive-force claims frequently "converge on one question: whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed was lawful." Cowan ex rel. Estate of Cooper v. Breen, 352 F.3d 756, 764 n.7 (2d Cir. 2003) (citing Saucier v. Katz, 533 U.S. at 201-02, 205 (2001) ("Paradigmatically, the determination of police misconduct in excessive force cases and the availability of qualified immunity both hinge on the same question: taking into account the particular circumstances confronting the defendant officer, could a reasonable officer, identically situated, have believed the force employed was lawful?")). Accordingly, for the reasons stated *supra*, disputed issues of fact remain as to whether Wigton and Quonce reasonably believed that the amount of force they used was lawful.[6]

### 3. Failure to Train

To establish municipal liability under § 1983, a plaintiff "must prove that 'action pursuant to

---

[6] Although the analyses converge, it should be noted that, while the excessive force inquiry itself is a matter appropriate for decision by a jury at trial, qualified immunity is "a question of law better left for the court to decide." Warren v. Dwyer, 906 F.2d 70, 76 (2d Cir. 1990); see also Lore v. City of Syracuse, 670 F.3d 127, 162 (2d Cir. 2012) (finding error in district court's decision to charge jury with deciding qualified immunity question in an action premised on sex discrimination).

official municipal policy' caused the alleged constitutional injury"—in this case, excessive force. Cash v. Cnty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011) (quoting Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) and Monell v. N.Y. City Dep't of Social Servs., 436 U.S. 658, 691 (1978)). An "official municipal policy" may be proved by a showing of a formal policy, or by "customs" or "usages." Monell, 436 U.S. at 690-91. "'[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983.'" Cash, 654 F.3d at 334 (quoting Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125 (2d Cir. 2004)). A municipality is deliberately indifferent when it "disregard[s] a known or obvious consequence of [its] action." Connick, 131 S. Ct. at 1359. Inadequate police training is one way that a plaintiff can establish a Monell claim, and is actionable "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). Courts analyze failure-to-train claims under a three part framework:

> The plaintiff must show that (1) a policymaker knows 'to a moral certainty' that her employees will confront a given situation . . . (2) the situation either presents the employee with a difficult choice of the sort that training will make less difficult or that there is a history of employees mishandling the situation . . . [and] (3) the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.

Walker v. City of N.Y., 974 F.2d 293, 297-98 (2d Cir. 1992).

Plaintiff has not adduced direct evidence of the City's training policies in discovery and, therefore, his claim cannot survive summary judgment. While circumstantial evidence as to training policies is sufficient to withstand a motion to dismiss, see Walker, 974 F.2d at 300, at summary

13

judgment "a plaintiff is expected to proffer evidence from which a reasonable factfinder could conclude that the training program was actually inadequate, and that the inadequacy was closely related to the violation." Amnesty Am., 361 F.3d at 130 n.8. Such showing requires actual "evidence of the town's training programs."[7] Id. at 130-31. Because the record is devoid of such evidence, the Court grants summary judgment to Defendants on the issue of municipal liability.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants City of Syracuse, Andrew Wigton, and Gordon Quonce's Motion (Dkt. No. 30) is **GRANTED in part** and **DENIED in part**. Summary judgment shall enter in favor of Defendant City of Syracuse on Plaintiff's claim for failure to train police officers; and it is further

---

[7] Were this matter before the Court on a motion to dismiss, Plaintiff's claim would have survived. The Court notes that at least 15 excessive force complaints have been filed against the City in the past 5 years. See Peterson v. Syracuse Police Dep't, 09-cv-0106 (N.D.N.Y. Feb. 2, 2009); Williams v. Falkowski, No. 11-cv-0826 (N.D.N.Y. Jul. 18, 2011); Brown v. City of Syracuse, 11-cv-0668 (N.D.N.Y. Jun. 14, 2011); Brady v. Syracuse Police Dep't, 12-cv-1384 (N.D.N.Y. Sep. 10, 2012); Smith v. City of Syracuse, 10-cv-0352 (N.D.N.Y. Mar. 25, 2010); McMahon v. Fura, 10-cv-1063 (N.D.N.Y. Sep. 2, 2010); Coleman v. City of Syracuse, 09-cv-1391 (N.D.N.Y. Dec. 14, 2009); Haag v. City of Syracuse, 10-cv-0077 (N.D.N.Y. Sep. 8, 2010); Carter v. Szakacs, 10-cv-1048 (N.D.N.Y. Aug. 30, 2010); Herring v. City of Syracuse, 09-cv-1168 (N.D.N.Y. Oct. 20, 2009); Epps v. City of Syracuse, 10-cv-1542 (N.D.N.Y. Dec. 21, 2010); Jones v. City of Syracuse, 11-cv-1010 (N.D.N.Y. Aug. 23, 2010); Lee v. Cnty. of Onondaga, 13-cv-1285 (N.D.N.Y. Oct. 17, 2013); Jenkins v. Syracuse Police Dep't, 10-cv-1223 (N.D.N.Y. Oct. 13, 2010); Hulett v. City of Syracuse, 14-cv-0152 (N.D.N.Y. Feb. 12, 2014). Furthermore, City officials have stated that the training policy regarding use of force is "not specific" and that change is needed to "disrupt a culture." Jim Kenyon, City Councilors Promise to Change Police Policies After Disabled Man Is Tased and Injured, CNYCENTRAL.COM NEWS (Aug. 20, 2013, 8:05 AM), http://www.cnycentral.com/news/story.aspx?list=190258&id=935774#.Uyipe4WGc9k. Although the Court understands that the extensive, detailed discovery necessary to develop facts surrounding training policies places an immense burden on a *pro se* plaintiff, caselaw mandates that the Court grant Defendants summary judgment on their Monell claim.

**ORDERED**, that Defendant City of Syracuse is **DISMISSED** from this action; and it is further

**ORDERED**, that Defendants Letter Motion (Dkt. No. 38) to consider their Motion for summary judgment unopposed is **DENIED**; and it is further

**ORDERED**, that Plaintiff Thomas Farrow's Cross-Motion (Dkt. No. 40) for summary judgment are **DENIED**; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED.**

DATED:     March 31, 2014
               Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge